IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CENTRAL LABORERS' PENSION FUND, <u>et al.</u>, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO. 09-3322 |
| IVY CONCRETE FOUNDATIONS, INC., MTI PROPERTIES LLC, MICHAEL T. IVY, Individually, | ) ) ) ) | |
| Defendants. | ) ) | |

<u>OPINION</u>

RICHARD MILLS, U.S. District Judge:

Pending before the Court is the Plaintiffs' motion for summary judgment.

This is an action to recover employer contributions pursuant to the Employee Retirement and Income Security Act of 1974 (ERISA), as amended, specifically section 515 of ERISA, 29 U.S.C. § 1145.  The Plaintiffs seek summary judgment based on the alter ego and successor liability theories alleged in their Amended Complaint.

# I. BACKGROUND

The Plaintiffs, Central Laborers' Pension Fund, <u>et al.</u>, are employee benefit funds administered pursuant to the terms and provisions of the Declarations of Trusts creating said Funds and are required to be maintained and administered in accordance with the provisions of the Labor Management Relations Act of 1947, and ERISA (as amended), 29 U.S.C. § 1001 <u>et seq.</u> The Central Laborers' Pension, Welfare and Annuity Funds are the collection agents for the other named Plaintiffs.

Defendant Ivy Concrete Foundations, Inc. (ICF) is an employer engaged in an industry within the meaning of ERISA, 29 U.S.C. § 1002(5), (11), (12) and (14). ICF's business address is 2901 Ridge Avenue, Springfield, Illinois 62702.

Ivy Concrete Construction (ICC) was started by Defendant Michael T. Ivy in 1994 and incorporated in 1996. At the time of its incorporation, Ivy was the sole shareholder, director and officer of the corporation. ICC was a concrete contractor whose business, according to the Defendants, was limited to the installation of driveways, sidewalks and patios. The Plaintiffs

2

dispute that the business was so limited.

The Defendants claims that in 2005, ICC ceased operations due to a lack of business. The Plaintiffs acknowledge that it ceased operations but contends this was in name only, claiming that a new business was soon formed as a continuation of ICC. ICC stopped operating at the end of 2005 and was involuntarily dissolved by the Illinois Secretary of State on August 8, 2006. The business address of ICC at the time it ceased operations was 2901 Ridge Avenue, Springfield, Illinois 62702. According to Ivy, the property located at that address also has an address of 2901 North Grand Avenue East, Springfield, Illinois. In effect, 2901 North Grand Avenue East and 2901 Ridge Avenue are two different addresses for the same property/location.

ICF was incorporated in Illinois on January 9, 2006. As he was with ICC, Mike Ivy is the sole shareholder, director, and officer of ICF. The Defendants assert this business was started in order to take advantage of the demand for the installation of concrete foundations. The Plaintiffs believe this new venture was simply a name change and the business

3

purpose of this company was the same as its predecessor–a concrete construction contractor.  The Defendants contend that the primary purpose of ICF is the installation of concrete foundations in residential property.  The Plaintiffs maintain that ICF did all types of concrete work.  In the concrete trade, the installation of concrete foundations in residential property is commonly referred to as "foundation work."

The Defendants contend that, due to the differing nature of the work performed by the two entities, the equipment used by ICF is different than the equipment used by ICC.  The Plaintiffs claim this assertion is immaterial because of the same business purposes of the two companies.  Moreover, the Plaintiffs dispute the accuracy of the assertion.  The Plaintiffs dispute the Defendants' contention that the only equipment used by ICC was a "pick-up truck, a trailer and a box van and miscellaneous hand tools."

The Defendants allege that, in its first year of operation, ICF obtained the following items of equipment for use in its business operations: a 2002 Chevrolet 2-ton Dump Truck; a 1996 Ford F650 Flat Bed; a 1979

4

International Boom Truck; a 1999 Dodge Ram 1-Ton Truck; a complete set of 1' wall forms; a complete set of 4' wall forms; a complete set of 8' wall forms, an oil sprayer; a jackhammer; walk-behind saws; and, hammer drills. The Plaintiffs contend this assertion is immaterial because the two companies had the same business purpose.  Moreover, both companies utilized heavy equipment.

The Defendants state that ICF took out its own loans to purchase equipment used in its business operations.  The Plaintiffs claim that this is immaterial.  Moreover, although the Plaintiffs do not dispute that ICF took out loans in its own name after it was formed, the Plaintiffs contend that several loans made in the name of ICC were never changed to reflect the cessation of business and remained in the name of the predecessor company until 2008 (for the Bobcat) and 2009 (for a Dodge truck).  Similarly, the titles for both vehicles remained in the name of the predecessor company.

ICC had signed a Participation Agreement which required it to make contributions to the Plaintiffs in accordance with the terms and conditions of the Agreements and Declarations of Trusts.  These Agreements and

Declarations of Trusts, in pertinent part, were attached to the Plaintiffs' Amended Complaint as Exhibits B, C, and D.

The Plaintiffs' two audit reports, one for the period of April 1, 2000 through March 31, 2003 showed ICC owed the Plaintiffs $19,091.07 in past due contributions, liquidated damages, and audit costs, and a second report, for the period of April 1, 2003 through December 31, 2005, showed ICC owed another $65,045.81 for past due contributions, liquidated damages and audit costs.  The Defendants dispute the allegations contained in this paragraph, contending that they are based on a document that has not been identified or authenticated and does not otherwise meet the requirements of admissibility.

The Plaintiffs further allege that as of December 31, 2005, Mike Ivy knew that ICC owed the Plaintiffs for past due contributions.   The Defendants assert that at the time, Ivy believed it owed the Plaintiffs between $22,000 and $25,000 for past contributions.  It did not receive a Statement of Additional Reportable Hours due for the period of April 1, 2003, through December 31, 2005, until after that date.

6

As early as January of 2004, Mike Ivy had retained counsel to try to negotiate a settlement of the past due contributions.  In 2005, ICC had accountant, Frank Kopecky, compile financial data and prepare its tax return, and from 2006 through 2009, ICF also retained Frank Kopecky to prepare its tax returns.

On October 14, 2005, ICC signed a promissory note with Illinois National Bank for $25,000 secured with a mortgage on property located at 2901 North Grand Avenue East in Springfield, Illinois.  The note was paid off on July 31, 2006 and the mortgage released on January 4, 2007.

On November 17, 2005, ICC signed a promissory note and mortgage with Illinois National bank in the amount of $238,300.  The proceeds from the note were from the construction of a residence at 3616 Hoylake Drive in Springfield, Illinois.  The note was paid off on July 14, 2006.

The 2005 tax return for ICC was the final tax return for this company.  ICC ceased doing business as a concrete construction company as of December 31, 2005.  A federal depreciation schedule attached to the 2005 tax return for ICC showed 17 items owned by the company with a

cost basis of $202,609.  Among the items owned by ICC were a 2005 Dodge Ram truck, a 2005 bobcat, a 1995 box van, a 1999 Cronkite trailer, a 1995 Cronkite trailer, and miscellaneous hand tools.

The Plaintiffs allege that all of the items referenced in the previous paragraph were then owned by ICF starting in January of 2006.  ICF did not pay ICC for the those items.  The Defendants object to these allegations, to the extent that Plaintiffs are asserting that <u>all</u> of the items listed in the above paragraph were then owned by ICF starting in January of 2006.  According to the Defendants, some of those items were disposed of at the end of their useful life.  Other items of equipment were inoperable and are in the possession of Mike Ivy, not ICF, while yet other items were sold.

The 2005 Dodge Ram truck was purchased with a loan from Illinois National Bank.  The loan remained in the name of ICC until the loan was paid off in 2009.  After January 1, 2006, payments on that loan were made by ICF.  The 2005 Bobcat was financed by a loan from Illinois National Bank.  The loan and title to the Bobcat remained in the name of ICC until

2008.  After January 1, 2006 and until 2009, ICF made payments on that loan.

The Plaintiffs allege that several employees, including Josh Eades and Gerry Edgington, worked for ICC in 2005 and then worked for ICF.  The Defendants assert that this allegation is based on a document that has not been identified or authenticated and does not meet the requirements for admissibility.

The Plaintiffs further claim that under the Participation Agreement signed by ICC with the Laborers Local 477, all types of concrete work were defined as covered work under the agreement.  The Defendants dispute this allegation to the extent that it is offered to suggest that ICF is engaged in similar operations as ICC.  The Plaintiffs cite the deposition of Brad Schaive in support of the allegation, and the Defendants claim that his testimony is immaterial based on Schaive's statement that he had no experience in performing concrete foundation work.  Moreover, the Defendants allege that whether or not all types of concrete work are covered by the Participation Agreement is not probative of the issue of whether or

9

not ICF is obligated, via the doctrines of successor or alter-ego liability, for the debts owed by ICC.

## II. DISCUSSION

The Plaintiffs claim they are entitled to summary judgment. Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).  The Court construes all inferences in favor of the non-movant.  See Siliven v. Indiana Dept. of Child Services, 635 F.3d 921, 925 (7th Cir. 2011).

### A. Successor Liability

In Count II of their Amended Complaint, the Plaintiffs asserted that ICF is a successor company to ICC and should be held liable for the contributions owed by ICC.  The Defendants claim that the evidence and all reasonable inferences drawn therefrom show there is a genuine issue of material fact as to whether there was a sufficient continuity of operations between ICC and ICF to warrant the entry of summary judgment on the Plaintiffs' successor liability claim.

The imposition of successor liability may be appropriate if "there exist sufficient indicia of continuity between the two companies and [] the successor firm had notice of its predecessor's liability." Upholsterers' Intern. Union Pension Fund v. Artistic Furniture of Pontiac, 920 F.2d 1323, 1329 (7th Cir. 1990). Indicators of continuity may include the presence of the same management and employees; use of the same plant, machinery, and equipment at the successor company; as well as the successor company fulfilling or honoring the previous commitments or obligations initially undertaken by the predecessor company. See id.

The Plaintiffs note that, in Artistic Furniture, there was a complete change of ownership between the predecessor and successor companies. See id. at 1325. Most of the predecessor company's employees, including supervisory personnel, were employed by the successor. See id. at 1329. The successor company used the same plant location, machinery and equipment and manufactured the same products. See id. The successor handled work orders not completed by the predecessor and honored warranty claims. See id. The court concluded that this constituted

11

"adequate continuity of operations for the purpose of imposing successor liability." Id.

The Plaintiffs assert that in this case, there are significant indicia of continued operations from ICC to ICF to easily establish continuity of operations. ICC and ICF have both been owned and managed by Mike Ivy and operated out of the same location of 2901 N. Ridge Avenue in Springfield, Illinois. Both companies have operated as concrete construction contractors. ICC used the same accountant to prepare its tax returns in 2005 that ICF used from 2006 through 2009. The Defendants note that ICC used a different accountant from 1994 until 2004, and ICF used a different accountant in 2010.

According to the Plaintiffs, two employees have been employed by both companies.[1] The Plaintiffs claim that ICF took possession of the assets and equipment of ICC when ICC ended operations on December 31,

---

[1] The Defendants claim that the information regarding the number of employees should not be considered because the documents contained within the exhibit proffered by the Plaintiffs have not been authenticated. If the information is considered, the Defendants emphasize that only two of the nine individuals employed by ICC also worked for ICF. Because the Plaintiffs did not reply to the argument regarding authentication, the Court declines to consider the information pertaining to the number of employees.

2005, and ICF started operations in January of 2006. Some of the equipment used by ICC--including a 2005 Dodge Ram truck, a 2005 Bobcat, a 1995 box van, a 1995 and 1999 Cronkite trailer, and miscellaneous hand tools–were used by ICF after ICF started operating. Additionally, ICF fulfilled or honored previous commitments or obligations initially undertaken by the ICC. As examples, the Plaintiffs allege that, from January 1, 2006 and until 2009, ICF continued to make payments on loans that had been taken out by ICC. The Plaintiffs contend that ICF continued to make payments for ICC's obligations, except for the obligations to pay the Plaintiffs for fringe benefit contributions. Given these factors, the Plaintiffs contend that continuity of operations is easily established.

The Defendants contend the evidence shows that ICF took out its own loans to purchase equipment used in its business operations. They claim it is unlikely that ICF would have encumbered itself with new loans for the purchase of new equipment if the only reason for its existence was to allow Mike Ivy to avoid paying the debts owed by ICC to the Plaintiffs.

13

The Plaintiffs further claim it is significant that Mike Ivy, as the sole stockholder, director, and officer of both companies, knew that ICC owed contributions to the Plaintiffs at the end of 2005 when ICC ceased operations. Ivy stated that as early as January of 2004, he had retained counsel to negotiate a settlement for the unpaid contributions. The Plaintiffs contend that, because Ivy knew of the delinquencies owed by ICC, ICF had knowledge of these liabilities. The Defendants counter that Ivy did not know how much ICC owed. Ivy testified that he believed ICC only owed the Plaintiffs between $22,000.00 and $25,000.00.

The Defendants contend the evidence establishes that ICF produces a different type of product (foundations), than the type of product which was produced by ICC (flatwork). Moreover, in building concrete foundations, ICF uses equipment such as wall forms, semi trucks and larger flat-bed trucks. ICC did not use those types of equipment in its business.

As the Plaintiffs argue, however, although concrete foundations may have been ICF's primary business purpose, Ivy testified that ICF did "[e]verything concrete." Brad Schaive, who is the business manager for

14

Laborers' Local 477 in Springfield, Illinois, testified that Ivy Concrete did both commercial and residential work and "anything that had to do with concrete," including "foundation work, basements" and "flat work, walls, I've seen all of it." Moreover, Schaive testified that he was unaware of any distinction between ICC and ICF.

The Court concludes there are "sufficient indicia of continuity" between the two companies in order for successor liability to apply. At most, the Defendants have shown that ICC and ICF emphasized different aspects of their work. The record establishes that both companies were concrete construction contractors that would perform "anything that had to do with concrete." The companies were owned and managed by the same person and operated out of the same location.

Although ICF may have taken out loans in its own name in order to purchase equipment, the record establishes that it also took possession of the assets and equipment of ICC when it ceased operations. ICF did not pay ICC for these goods. Moreover, ICF paid the balance owed on loans taken out by its predecessor. It appears that ICF assumed all of ICC's

15

obligations.  ICF used the same accountant from 2006-2009 as ICC in 2005.

Even when the facts are viewed in a light most favorable to the Defendants, the Court concludes that ICF is a successor company to ICC and is liable for the latter's contributions.

### B. Alter Ego Liability

Count I of the Plaintiffs' Amended Complaint asserted that ICF is liable for contributions pursuant to an alter ego theory.  "[T]he alter ego doctrine focuses on the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets."  Central States, Southeast and Southwest Areas Pension Fund v. Sloan, 902 F.2d 593, 596 (7th Cir. 1990).  Factors that courts consider are: "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership."  Trustees of Pension, Welfare and Vacation Fringe Ben. Funds of IBEW Local 701 v. Favia Elec. Co., Inc., 995 F.2d 785, 788 (7th Cir. 1993).  It is not essential

that each factor be present.  See id. at 789.  An essential part of an alter ego claim is evidence of an unlawful intent to avoid the employer's obligations to pay fringe benefit contributions.  See id.

For many of the reasons previously discussed, the Court concludes that an alter ego relationship exists between the companies.  Although the Defendants cite Ivy's deposition testimony that ICF was created in order to allow him entry into the market for residential foundation work, the record establishes that both entities were concrete construction companies that performed the same work, while perhaps emphasizing different aspects.

Given the evidence that both companies performed any and all types of work having to do with concrete, the only logical conclusion is that ICF was formed to avoid the obligations of ICC.  ICF is the alter ego of ICC. Accordingly, the Court concludes that summary judgment would also be appropriate pursuant to an alter ego theory of liability.

Ergo, the Plaintiffs' motion for summary judgment [d/e 31] is ALLOWED.

Consistent with the judgment previously entered in Central Laborers'

17

<u>Pension Fund et al. v. Ivy Concrete Construction, Inc.</u>, Case Number 3:07–CV–03015–BGC, Judgment will be entered in favor of the Plaintiffs, Central Laborers' Pension Fund, <u>et al.</u>, and against the Defendant Ivy Concrete Foundations, Inc., in the amount of $90,165.63 for contributions, liquidated damages and audit costs;

Defendant Ivy Concrete Foundations, Inc., is hereby Ordered to provide financial and payroll books and records to the Plaintiffs for the conduct of a payroll compliance audit to determine all contributions due and owing from January 1, 2006, until the date Judgment is entered;

The Defendant will be Ordered to pay the Plaintiffs' reasonable attorney's fees accrued during this cause of action as provided by ERISA, 29 U.S.C. § 1132(g)(2), and the Plaintiffs' respective Agreements and Declarations of Trusts;

The Plaintiffs are Directed to file a status report pertaining to the payroll compliance audit within 90 days of the entry of this Order.  The Defendant may file a response 14 days thereafter.

ENTER: September 29, 2011

FOR THE COURT:

s/Richard Mills
United States District Judge